UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-20332-CR-MOORE/MCALILEY

UNITED STATES OF AMERICA

vs.

VICTOR ALFONSO MOSQUERA PEREZ,
    a/k/a "Negro,"

        Defendant.
_____/

**STIPULATED FACTUAL PROFFER**

If this case were to proceed to trial, the government would be able to prove that the defendant, **VICTOR ALFONSO MOSQUERA PEREZ, a/k/a "Negro,"** participated in many multi-thousand kilogram shipments of cocaine that originated in Colombia and were destined for Central America, Mexico and eventually to be imported into the United States. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, **VICTOR ALFONSO MOSQUERA PEREZ, a/k/a "Negro,"** are sufficient to prove the guilt for **Count 1**, that is, from in and around 2008 through on or about May 2014, in the countries of Colombia, Honduras, Nicaragua, Mexico, and elsewhere the defendant, violated Title 21, United States Code, Section 963.

Specifically, witnesses identified that from approximately 2008 through 2014, **MOSQUERA** participated as an investor and/or a manager/supervisor in more than 20 shipments of cocaine. Each shipment contained between 400 and 2,200 kilograms of cocaine. **MOSQUERA** invested with other co-conspirators in order to acquire the cocaine, transport the cocaine by go-fast boat or aircraft to Central America and then sell the cocaine to buyers in Central America and Mexico. **MOSQUERA** paid taxes to the Urabeno's drug trafficking

organization in Colombia and participated as a partner on many multi-thousand kilogram of cocaine shipments with various members of Urabeno's drug trafficking organization. **MOSQUERA** frequently had meetings with other members of the Urabeno's organization who **MOSQUERA** referred to as "La Empresa." At least 5 witnesses corroborate one another in their detailed accounting of drug shipments that **MOSQUERA** owned, managed and/or coordinated. During several loads, **MOSQUERA** hired boat crewmembers in order to drive go-fast boats from the north coast of Colombia to Honduras, Costa Rica and Nicaragua. The cocaine was sold to Guatemalan and Mexican buyers and **MOSQUERA** was paid in US Dollars knowing the drugs would ultimately be imported into the United States.

Specifically, On November 3, 2013, a go-fast vessel was spotted by law enforcement between San Andres, Colombia and Nicaragua. The vessel was chased all the way to Nicaragua where it arrived on the beach. The vessel and the suspected cocaine aboard the vessel were both burned on the beach in Nicaragua. Nicaraguan authorities arrived and the crew was detained. Ultimately the crew was released due to insufficient evidence because the cocaine was burned. This shipment of cocaine was corroborated by multiple sources including **MOSQUERA** himself. **MOSQUERA** also admitted to being an owner and investor in this load.

(INTENTIONALLY LEFT BLANK)

**MOSQUERA** admits to being an investor, manager, and/or supervisor sufficiently to establish a three-point enhancement at sentencing. **MOSQUERA** further admits that from in and around 2008 through on or about May 2014 the aggregate amount of cocaine which is attributable to the drug trafficking activities in which he was involved totaled at least 7,500 kilograms.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/5/16     By: _____
MICHAEL B. NADLER
ASSISTANT UNITED STATES ATTORNEY

Date: 2/5/16     By: _____
DAVID FERNANDEZ
ATTORNEY FOR DEFENDANT

Date: 2/5/16     By: _____
VICTOR ALFONSO MOSQUERA PEREZ
DEFENDANT