**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**

Case Number: 14-CR-20332-KMM

**UNITED STATES OF AMERICA,**
    *Plaintiff*,

vs.

**VICTOR ALFONSO MOSQUERA PEREZ,**
    *Defendant.*
_____/

### DEFENDANT VICTOR ALFONSO MOSQUERA PEREZ'S SENTENCING MEMORANDUM

Comes Now the Defendant, Victor Alfonso Mosquera Perez, by and through his undersigned counsel, and hereby submits the instant Sentencing Memorandum wherein the defense submits that the Pre Sentence Investigation Report overstates the guideline range and therefore suggests a guideline level that would result in an unwarranted sentencing disparity. The following is set forth in support of the Defendant's position:

INTRODUCTION:

The memorandum of law that follows will be outlined as follows: **Section I** will discuss the United States Sentencing Guidelines ("U.S.S.G.") computation as suggested by the Pre Sentence Investigation Report ("PSIR") prepared by the United States Probation Office and the Defendant's U.S.S.G. computation, **Section II** will discuss the Defendant's objections to the PSIR and the reasoning for adopting the Defendant's computation of the U.S.S.G.. **Section III** will address Title 18 U.S.C. §3553 factors. Lastly, **Section IV** will explain why the recommended sentence is reasonable given the assertions in sections I and III hereof.

I. <u>THE UNITED STATES PROBATION OFFICE'S AND THE DEFENDANT'S COMPUTATION OF THE UNITED STATES SENTENCING GUIDELINES</u>

The United States Probation Office's offense level computation is as follows:

| | |
|---|---:|
| Base Offense Level | 38 |
| Specific Offense Characteristics | +2 |
| Adjustment for Role in the Offense | +3 |
| Adjusted Offense Level | 43 |
| Acceptance of Responsibility | - 3 |
| Total Offense Level | 40 |

The Defendant's offense level computation is as follows:

| | |
|---|---:|
| Base Offense Level | 38 |
| Adjustment for Role in the Offense | +3 |
| Adjusted Offense Level | 41 |
| Adjustment for acceptance of responsibility | - 3 |
| Total Offense Level | 38 |

2

II. THE DEFENDANT'S ARGUMENT IN SUPPORT OF HIS PROPOSED COMPUTATION OF THE UNITED STATES SENTENCING GUIDELINES

1. The two level enhancement for the use of a non-commercial aircraft is inapplicable

The Defendant objects to the imposition of a two level enhancement for specific offense characteristics based on U.S.S.G. § 2D1.1(b)(3)(A). The pertinent provision of U.S.S.G. states that "If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance...increase by two levels." This guideline is not applicable absent evidence that an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance directly into or out of the United States. Both the plain language of the sentencing guidelines and case law interpreting the meaning of Section 2D1.1(b)(3)(A) compel the conclusion that the enhancement does not apply unless the private airplane is used to directly import cocaine into the United States. Since no such facts are present in this case, as a matter of law, the airplane enhancement does not apply.

The "specific offense characteristics" for federal narcotics trafficking offenses contain a two-level increase when certain modes of transportation are used in connection with these crimes. Thus, the federal guidelines provide that:

> If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, (B) a submersible vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used, or (C) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels (emphasis added).

By its express terms, the airplane enhancement only applies when a private airplane was "used to import or export" the controlled substance – not whenever such an airplane is merely "used" in

3

the offense or used to transport the controlled substance across any territorial boundary. The language specifically requiring that the plane be used to import or export is significant when contrasted with the subsequent provision of the offense characteristic. The two level increase applies whenever a submersible or semi-submersible is "used" in connection with the offense - without proof of importation or exportation. The PSIR in the instant case asks us to read "import or export" to mean the crossing of any territorial boundary as opposed to importation into the United States. The Defendant respectfully submits that such a reading is absurd. If Congress intended such a meaning, the provision would read, "an aircraft other than a regularly scheduled commercial air carrier was used to *transport* the controlled substance."

    The enhancement does not apply, for two reasons. First, the enhancement does not apply because a private airplane was not used to import drugs into the United States. The only use of a non-commercial aircraft in this case occurred when the cocaine was sent from Colombia to Central America. The use of an airplane in this context was addressed by the Ninth Circuit Court of Appeals in a case later cited by the Eleventh Circuit; the enhancement was inapplicable there as it should be here . See *United States v. Joelson*, 7 F.3d 174 (9th Cir. 1993). Second, the Defendant pled guilty to conspiring to distribute drugs knowing they would be imported into the United States, and not to the substantive offense of doing so. The government agrees that there is no evidence whatsoever that drugs were actually imported into the United States as a consequence of this conspiracy. Because the airplane was not used as part of a scheme that led to drugs actually being imported into the United States, the enhancement does not apply. *United States v. Chastin,* 198F.3d 1338 (11th Cir. 1999) ; see also *United States v. Rendon*, 354 F.3d 1320, fn. 7 (11th Cir. 2003).

    In *United States v. Joelson*, 7 F.3d 174 (9th Cir. 1993), the Court of Appeals reviewed this statutory provision and concluded that the airplane enhancement did not apply unless a

4

private plane was used to directly import or export the drugs into the United States. The defendant in *Joelson* was arrested after an undercover DEA operation in which he agreed to import approximately 800 kilograms of cocaine into the United States. The cocaine was brought by private plane to Guatemala, where it was "received" by DEA agents and brought to the United States via commercial airliner. The trial judge found that the two-level increase contained in the federal sentencing guidelines applied. The unanimous Court of Appeals reversed. It concluded that the "plain language" of the Guidelines compelled the conclusion that a private airplane had to have been used during the importation of the drugs. It reasoned that: "Stretching the definition of 'used to import' to incorporate any use of a private plane, regardless of whether it was used during the actual importation of the cocaine flies in the face of the "plain language" of section 2D1.1(b)(2)." *Joelson*, 7 F.3d at 180.

The Eleventh Circuit Court of Appeals cited to *Joelson* when it addressed the issue before this Court in *United States v. Chastin,* 198F.3d 1338 (11th Cir. 1999). In that case, the "Appellants argue[d] that the enhancement was inappropriate because no actual importation or "use" occurred on these facts. *Id* at 1353. The appellate court agreed and pointed out that "[t]he district court below, in applying the enhancement, endorsed a broad interpretation of the plain language of the guidelines, relying on the terms "Attempt or Conspiracy" found in the title of § 2D1.1. *Ibid.* The ultimate holding of the case was that the district court erred in applying the enhancement because the Court reasoned "Here, the language of the guideline clearly contemplates a completed event, an actual importation. That did not occur in this case. The Court will not look to the title of a guideline to explain what is quite clear in its text." *Ibid.*

In another Eleventh Circuit opinion the court reiterated the reasoning in *Chastin* in holding that a similar enhancement also required proof of a completed event such as an actual importation. *United States v. Campa*, 529 F.3d 980 (11th Cir. 2008). "The district court erred.

5

Like the Guideline that we interpreted in *Chastain*, section 2M3.1 clearly contemplates a completed event: the actual gathering or transmission of top secret information. Because the district court did not find that top secret information was gathered or transmitted, we remand for resentencing." *Id* at 1014. The government and the defense agree that there is no evidence of an actual importation and therefore the event that would trigger the enhancement has not been established in this case. The undersigned has spoken to Assistant United States Attorney Michael Nadler who concurs that the airplane enhancement should not be applied in this case.

The Probation Officer's response to the Defendant's objection to the applicability of the private aircraft enhancement is unpersuasive because it fails to address a fundamental rule of statutory interpretation, the rule of lenity, and he mistakenly concluded that the government agreed with their position. The Officer's response exposes the position that "this enhancement can be applied for defendants who export controlled substances from **another country** via private or non-commercial aircraft, even in cases when substances end up crossing the border and are imported into the United States through motor vehicles or other means". See Addendum to the Presentence Report page 1. This position requires that we assume that congress meant this enhancement to apply exterritorialy and yet they did not include the pivotal "another country" language necessary to reach the conclusion they ask this court to adopt in this case. In essence Probation is asking this Court to adopt a position that is the opposite of what the law requires; they are asking for the guideline enhancement to be read in a light most favorable to the application of the enhancement against the Defendant. The "rule of lenity" applies to the guidelines and requires the court to "infer the rationale most favorable to the [defendant] and construe the guidelines accordingly." See *Unites States. v. Flemming*, 617 F. 3d 252 (3d Cir. 2010) (applying rule of lenity to resolve ambiguity in guidelines in defendant's favor). If the Court determines that the guideline provision is ambiguous, it should infer the rationale most

6

favorable to the Defendant and rule that this enhancement not be applied.

The United States Probation Office's contention that the government agrees with their position on the enhancement issue is incorrect. The Probation Officer mistakenly understood that Assistant United States Attorney Michael Nadler agreed with the rationale the Officer expressed during their telephonic conversation. Secondly, the Probation Officer's position fails because it presumes that the drugs were imported into the United States through other means; a conclusion not supported by the evidence in this case, nor the prosecutor's representations. The undersigned conferred with Assistant United States Attorney Michael Nadler and he agrees with the defense that this enhancement should not be applied given the state of the law and the facts of this case.

2. <u>The two level enhancement for the use of a non-commercial aircraft is inapplicable due to absence of congressional intent that it be applied extraterritorially</u>

The enhancement for the use of a private aircraft should not be imposed because it would result in a disparity in the computation of the U.S.S.G. range as compared to similarly situated defendants in the Southern District of Florida ("SDFL"). (Please see Section III subsection 6 of this document titled, The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.)

The policy and legislative intent that motivated the airplane enhancement in U.S.S.G. §2D1.1(b)(3) are inapplicable to the case presently before this Honorable Court. Undoubtedly, congress meant to legislate a harsher sentence for the convicted drug trafficker who used a non-commercial aircraft to import drugs into or out of the United States. The question presented in the application of the enhancement in the context of this case is whether congress intended to enact a sentencing enhancement applicable when the conduct motivating the enhancement

7

occurred exclusively in a foreign country and has no direct impact upon the Unites States. There is no wording in the guideline enhancement that directs or suggests the extraterritorial application.

Several factors weigh against the notion that the congressional intent was to apply the enhancement in case similar to the one before this Honorable Court. A review of Section III subsection 6 of this document will reveal numerous cases where the enhancement was not imposed even though a non-commercial aircraft was used to export controlled substances from and to foreign countries.. The implication is that a great majority of defendants are simply not given this enhancement because this particular enhancement was intended to apply in scenarios where the importation into the United States was accomplished by utilizing non-commercial aircraft..

A recent thoughtful analysis by a Georgia Federal Court is illustrative of the interpretation and applicability of congressional intent in extraterritorial application of American criminal statutes.

> ...it is well established that Congress has the power to apply its laws outside the territory of the United States under certain circumstances. EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991), superseded on other grounds by statute, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 ("Both parties concede, as they must, that Congress has the authority to enforce its laws beyond the territorial boundaries of the United States."); see also Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147, 77 S. Ct. 699, 1 L. Ed. 2d 709 (1957); Foley Bros., Inc. v. Filardo, 336 U.S. 281, 284-285, 69 S. Ct. 575, 93 L. Ed. 680 (1949); United States v. Noriega, 746 F. Supp. 1506, 1512-13 (S.D. Fla. 1990) ("the United States has long possessed the ability to attach criminal consequences to acts occurring outside this country which produce effects within the United States . . . . [f]or example, the United States would unquestionably have authority to prosecute a person standing in Canada who fires a bullet across the border [*11] which strikes a second person standing in the United States" (internal citations omitted)).
> Nevertheless, the Supreme Court has held that "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" Arabian Am. Oil Co., 499 U.S. at 248 (quoting Foley Bros., 336 U.S. at 285); see also United States v. Belfast, 611 F.3d 783, 811 (11th Cir. 2010). Thus, there is a

8

>presumption that U.S. statutes apply only to activities that occur within the borders of the U.S. and its territories, and courts may give extraterritorial effect to a particular statute only when "congressional intent is clear." MacAllister, 160 F.3d at 1307; see also Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 188, 113 S. Ct. 2549, 125 L. Ed. 2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested"); Belfast, 611 F.3d at 813 ("we assume that Congress does not intend for a statute to apply extraterritorially unless it evinces that intent clearly"); United States v. Frank, 599 F.3d 1221, 1230 (11th Cir. 2010) ("We presume that statutes only apply domestically, [*12] and give extraterritorial effect where congressional intent is clear.") (internal quotation marks and citations omitted). *United States v. Galvis-Pena*, 2011 U.S. Dist. LEXIS 153045, 10-12 (D. Ga. 2011)

The opinion points out that if the factual scenario is analogous to the Canadian hypothetical, then the intent is obvious as the harm caused by the discharge of the firearm directly impacted a citizen on United States soil. The obvious applicability of the enhancement is severely clouded when there is no such direct impact. This issue is compounded by the fact that there is not a statement of congressional intent in this enhancement mandating its extraterritorial application. Applying the premise espoused in *Galvis-Pena* to the facts of this case, namely, the exterritorial use of a non-commercial aircraft to export drugs from the source country to a third country, one must conclude that the application of the enhancement is not substantiated by congressional intent.

A thorough review of Eleventh Circuit and United States Supreme Court precedent revealed no cases holding that the extraterritorial application of this enhancement in the context of an exportation and importation occurring wholly outside of the United States is proper. To the contrary, the cases which address the applicability of this enhancement require proof of an actual importation using a non-commercial aircraft or proof of an eventual importation into the United States. The two level enhancement at issue should not be applied as neither of the two aforementioned scenarios are present in the case subjudice.

III. THE DEFENDANT'S TITLE 18 U.S.C. §3553 DISCUSSION

After "consult[ing] and correctly determin[ing] the sentencing range prescribed by the

9

Sentencing Guidelines…[t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. §3553(a)." *U.S. v. McBride,* 511 F. 3d 1293 (11th Cir. 2007); *See also Gall v. United States,* 552 U.S. 38 (2007). The applicable 3553(a) factors are set forth and discussed below.

There are seven 3553(a) factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the following subsection. The court, in determining the particular sentence to be imposed, shall consider:

1. <u>The nature and circumstances of the offense</u>- The Defendant is charged with conspiracy to import cocaine into the United States and admittedly this is a serious offense.

<u>History and characteristics of the Defendant-</u> The Defendant is a thirty-one year old father of two minor children. The Defendant has never been arrested or accused of violating the law prior to this case. The Defendant has plead guilty and accepts responsibility for his actions. He has been a loving and caring father to his children and has always provided for his family. The Defendant is not accused, nor has he undertaken any acts of violence associated or connection with his drug trafficking activities.

2. <u>The need for the sentence imposed</u>

(A) <u>To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense</u>-The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense will be served by the recommended sentence. A twenty year sentence for the Defendant amounts to the taking of the most productive years of a human being's life. Assuming good behavior this sentence would result in the Defendant's incarceration from his present age of

10

thirty-one through roughly his 50th birthday. The sentence the government and the Defendant jointly recommend, 235 months, would result in the Defendant's incarceration for a great majority of his productive adult life. A sentence of this magnitude, served in a foreign country, without the possibility of social visitation with his family is surely more than sufficient to address the sentencing concerns enumerated above.

(B)     <u>To afford adequate deterrence to criminal conduct</u> - The prospect of spending the next twenty years in an American jail, away from his family, is surely a sufficient deterrent. See also part C below.

(C)     <u>The need to protect the public from further crimes of the Defendant</u> - The need to protect the public will be served with the recommended sentence as the Defendant had never spent a day in jail prior to being charged in this case and the shock of the incarceration he has endured since December of 2014 has already taken a serious toll on his emotional well being. The Defendant understands the seriousness of the offense and will potentially spend the next twenty years in a foreign jail. The deterrent value of the sentence is obvious on its face.

(D)     <u>The need to provide the Defendant with needed educational or vocational training, medical care or other correctional treatment</u> - There is no need to provide the Defendant with any medical care in the immediate future and the recommended sentence will undoubtedly present many educational or vocation treatment opportunities. The Defendant owned his own retail business prior to entering into the criminal conduct he is now charged with and was among the more successful people in his family. Given the opportunity he will put his entrepreneurial talents to good use upon his release.

3.     <u>The kinds of sentences available</u> - There is a mandatory ten year minimum sentence that applies to the Defendant's charged conduct and the U.S.S.G. sentencing range of is only advisory.

11

4. <u>The kinds of sentence and the sentencing range established by the U.S.S.G.</u> – The U.S.S.G. range is 235 – 293.

5. <u>Any pertinent policy statements</u> – There are no known policy statements applicable to the Defendant.

6. <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u> – This Court should not apply the airplane enhancement in this case because doing so would create an unwarranted sentencing disparity between similarly situated defendants. In the following Southern District of Florida cases, the airplane enhancement was NOT applied by the court (NOTE: this is a NON-exhaustive list of cases - defense counsel believes there to be other cases in which similar facts are present and the enhancement was NOT applied):

Alvaro Suarez Granados, Case-10-cr-20798, Honorable Judge Cooke;

Marllory Chacon Rossell, Case-11-cr-20582, Honorable Judge Martinez;

Nilton Monje Alvarado, Case-13-cr-20892, Honorable Judge Williams;

Jorge Ivan Gonzalez-Ramirez, Case-11-cr-20027, Honorable Judge Jordan;

Fernandez-Barrero Brothers, Case-10-cr-20587, Honorable Judge Graham;

Adelino Inacio Vela, Case-12-cr-20365, Honorable Judge Lenard;

Alejandro Canal Duplat, Case-11-cr-20388, Honorable Judge Lenard;

Leonard Ortiz-Ruiz, Case-11-cr-20571, Honorable Judge King ;

Andres Coneo-Higuera, Case11-cr-20560, Honorable Judge Middlebrooks;

Luis Roa-Sanchez, Case-13-cr-20113, Honorable Judge Rosenberg;

Ramon Quintero Sanclemente, Case-08-cr-21084, Honorable Judge Dimitrouleas;

Jaime Alberto Marin Zamora, Case-09-cr-20140, Honorable Judge Seitz; &

Ramiro Vanoy Ramirez, 99-cr-6153, Honorable Judge Moore

Of particular note is the Yaneth Del Carmen Vergara Hernandez case 14-cr-20557; this case has facts analogous to the case now before this Honorable Court. The following is contained in the plea agreement's factual proffer:

> "The Defendant is guilty of the offense charged in Count l of the Indictment, that is, conspiracy to distribute five (5) kilograms or more of cocaine, knowing that such cocaine would be imported into the United States, in violation of Title 21, United States Code, Section 963.
> During the timeframe alleged in the Indictment, Defendant conspired and agreed with Marllory Chacon Rossell, Sebastiana Hortencia Cotton Vasquez a/k/a Doha Tana, Oliverio Fernandez Pelaez Solano a/k/a "captain Americas" and others to traffic a 450 kilogram cocaine shipment by airplane from La Guajira, Colombia to Rio Dulce, Guatemala, knowing that the cocaine would ultimately be imported to the United States.
> Defendant operated as an investor, source of supply, and dispatch coordinator of the shipment.
> On or about June 10, 201 3, Defendant was video and audio recorded by law enforcement at a meeting in Guatemala with co-conspirators Chacon and Pelaez. The former introduced the latter to the Defendant as a reliable airborne cocaine load coordinator. Defendant stated she would be responsible for the cocaine until the transporting aircraft was loaded and left the clandestine airstrip in Colombia. At a subsequent meeting, Defendant Chacon and co-conspirator Cotton, discussed working together to traffic cocaine.
> On or about October 27, 2013, Defendant sent to Chacon via Blackberry Messenger photographs of kilograms of packaged, bundled cocaine bricks in Defendant's possession in Colombia, ready to be loaded onto an aircraft to be sent by Pelaez for transportation to Guatemala.
> On or about January 9, 2014, Defendant sent Chacon via Blackberry Messenger contact information for the person in charge of picking up the cocaine shipment in Guatemala.
> The next evening, Defendant reported to Chacon via Blackberry Messenger that the cocaine shipment had left La Guajira, Colombia.
> On or about January 11, 2014, the cocaine shipment arrived in a Seneca aircraft in Rio Dulce, Guatemala', it was seized by authorities. The load contained l8 bags, each holding 25 packages of one kilogram of cocaine, for a total of 450 kilogram s of cocaine.
> The suspected cocaine tested positive for cocaine at a Guatemalan government laboratory."

In the Vergara Hernandez case probation took the position that the two level enhancement was applicable based on the same reasoning as the Probation Office has utilized in this case. During the sentencing hearing held on March 9, 2016 before the Honorable Judge Marcia G. Cooke, the defense contended that according to controlling legal precedent the enhancement should not be

13

applied.  The Court ruled that the enhancement was inapplicable and sentenced the defendant Vergara Hernandez sans the enhancement.  The appropriate and correct refusal by the Vergara Hernandez Court to apply the airplane enhancement compels similar treatment here.  A failure to do so would create an unwarranted sentencing disparity between similarly situated defendants.

    7.    <u>The need to provide restitution to any victims of the offense</u> – There are no known victims in this case.

    IV.    <u>THE DEFENDANT'S SENTENCING RECOMMENDATION</u>

The Defendant respectfully requests that this Honorable Court impose a sentence of 235 months.  The legal analysis undertaken in Section II addressing the inapplicability of the U.S.S.G. sentencing enhancement based on the use of a non-commercial flight and the potential for unwarranted sentencing disparities ultimately lead to a U.S.S.G. range of 235 – 293. Careful consideration of the Title 18 U.S.C. §3553 leads to the conclusion that a sentence of 235 months is sufficient but not greater than necessary.

WHEREFORE the Defendant prays that this Honorable Court grant the relief requested herein and order that the United States Probation Office correct the PSIR accordingly.

    Respectfully Submitted,
    David Fernandez, P.A.
    Attorney for  Victor Alfonso Mosquera Perez

By:    s/ *David M. Fernandez*
    David M. Fernandez
    One Southeast Third Avenue, Suite 2920
    Miami, Florida 33131-1715
    Telephone: (305) 480-8788
    Facsimile:  (305) 536-6495
    Email:  DavidFernandez.PA@gmail.com

14

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically on April 26, 2016. The following parties shall be noticed accordingly:

Assistant United States Attorney
Michael Nadler

By:   s/ *David M. Fernandez*<br>David M. Fernandez

Law Office of David Fernandez, P.A. • One Southeast Third Avenue, Suite 2920 • Miami, Florida 33131 • (305) 480-8788